**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 9, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CHRISTIAN ALEXANDER
SANGIOVANNI,

    Defendant - Appellant.

No. 14-2158
(D.C. No. 1:10-CR-03239-JB-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **EBEL**, and **BACHARACH**, Circuit Judges.
_____

In this direct criminal appeal, Defendant-Appellant Christian Sangiovanni

challenges his conviction for being a previously convicted felon unlawfully in

possession of a firearm, and the 120-month prison sentence the district court imposed

for that offense. Having jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C.

§ 3742(a), we AFFIRM.

## I. BACKGROUND

Viewed in the light most favorable to the jury's verdict, see United States v.

Jim, 786 F.3d 802, 804-05 (10th Cir. 2015), cert. denied, 136 S. Ct. 348 (2015), the

---

[*] This order and judgment is not binding precedent, except under the doctrines of law
of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

evidence presented at trial indicated the following: On April 25, 2010, Sangiovanni confronted S.V., a seventeen-year-old high school senior, in the parking lot of a convenience store. Sangiovanni, who had "unrequited romantic feelings" for S.V. (Aple. Br. 5), got into S.V.'s van, became angry, pulled a gun and held S.V. at gunpoint; at one point he cocked the gun and told S.V. "I'll blast you. . . . I'm not afraid to blast you and me right here. I'm not scared to die. I'd rather die and go to Heaven with you than lose you to someone else" (V R. 233 (internal quotation marks omitted).) S.V. recognized the gun that Sangiovanni pointed at her, a nine-millimeter Smith and Wesson that belonged to Dallas Green, Sangiovanni's housemate and S.V.'s former boyfriend.

Eventually Sangiovanni calmed down and let S.V. go. Before doing so, however, he warned her: "Don't go telling the police or your parents about this, otherwise I'm going to have to kill you and your family and then kill myself." (Id. 235 (internal quotation marks omitted).)

Undeterred, S.V. went home and told her mother, who called the police. Although S.V. told police officers that day that Sangiovanni had threatened her, she did not mention that Sangiovanni had a gun. The next day, however, S.V. told the police resource officer assigned to her school both about the assault and that Sangiovanni had a gun.

Several hours after the assault and in between S.V.'s conversations with police, Sangiovanni sent S.V. a threatening email. At some later point in time, Sangiovanni emailed S.V. two photographs of him pointing a gun to his own head.

2

Eight days after the assault, police executed a search warrant at the home where Sangiovanni lived with Dallas Green and his family. There, in Green's stepfather's room, officers found the nine-millimeter gun that Sangiovanni had used to threaten S.V. and ammunition. Later, Sangiovanni called S.V. from jail. During the call, which was recorded, Sangiovanni admitted to threatening S.V. with a gun.

A grand jury charged Sangiovanni with being a previously convicted felon unlawfully in possession of a firearm, the nine-millimeter Smith and Wesson, in violation of 18 U.S.C. § 922(g)(1). At trial, Sangiovanni defended against that charge by arguing that S.V. was lying about his having a gun. The jury, nevertheless, convicted Sangiovanni.

At sentencing, the district court calculated Sangiovanni's advisory sentencing range to be between 168 and 210 months in prison. But because, by statute, Sangiovanni's offense was punishable by no more than ten years in prison, see 18 U.S.C. § 924(a)(2), ten years (120 months) became Sangiovanni's advisory guideline range. See U.S.S.G. § 5G1.1(a). The district court imposed a 120-month prison sentence.

## II. LEGAL DISCUSSION

### A. The district court did not abuse its discretion in admitting the threatening email

At 2:53 the morning after the incident, and after S.V. had spoken with police, Sangiovanni sent her this email with the subject line "Haha":

> Fuk u u dumbass bitch u ain t gone prove shit. Fuk u n ur story. Ain t
> ne body gone believe u. U gone try 2fuk me over? U can t even prove I

3

do heroin. Fukn bitch ass spoiled brat. Hav a nice fukn life alone. Haha.

(I Supp. R. 5 (Gov't Ex. 8).)[1]

The district court did not abuse its discretion in admitting this email over Sangiovanni's objection, made under Fed. R. Evid. 403, that the email's unfair prejudice to Sangiovanni substantially outweighed its probative value. In rejecting Sangiovanni's argument, the district court reasoned that his sending S.V. a threatening email within hours of the purported assault was probative because it made it more probable that Sangiovanni had done something that he did not want S.V. to report to the police, Fed. R. Evid. 401; and any prejudice to Sangiovanni stemming from admitting the email was not unfair, that is it would not cause jurors to reach a verdict based on emotion rather than reason, see United States v. Rodella, 804 F.3d 1317, 1334 (10th Cir. 2015), petition for cert. filed, 84 U.S.L.W. 3546 (U.S. Mar. 14, 2016) (No. 15-1158).

## B. The district court did not abuse its discretion in admitting two photographs that Sangiovanni emailed to S.V., depicting him holding a gun to his head

Sangiovanni next contends that the district court abused its discretion in admitting, under Fed. R. Evid. 404(b)(2), the two photographs Sangiovanni emailed to S.V. depicting him holding to his head what appears to be a gun similar to the weapon with which Sangiovanni threatened S.V. Although such "[e]vidence of a

---

[1] In admitting this email, the district court directed the Government to redact the line about S.V. being unable to prove Sangiovanni did heroin. At Sangiovanni's request, however, the line was ultimately not redacted.

4

crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," Fed. R. Evid. 404(b)(1), it "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," Rule 404(b)(2).

Evidence is admissible under Rule 404(b)(2) if it satisfies "the four-part test set out in" Huddleston v. United States, 485 U.S. 681, 691-92 (1988):

> (1) the evidence was offered for a proper purpose under Rule 404(b); (2) the evidence was relevant under Rule 401; (3) the probative value of the evidence was not substantially outweighed by its potential for unfair prejudice under Rule 403; and (4) the district court, upon request, instructed the jury pursuant to Rule 105 to consider the evidence only for the purpose for which it was admitted.

Rodella, 804 F.3d at 1333 (alterations, quotation omitted). Here, the district court did not abuse its discretion in admitting these photos under Rule 404(b)(2) because they satisfied each of the Huddleston factors. See Rodella, 804 F.3d at 1329 (reviewing district court's Rule 404(b) ruling for abuse of discretion).

First, the Government offered these photos for a proper purpose under Rule 404(b)(2), to prove that Sangiovanni knew about the gun and had an opportunity to access it. Second, the photos were relevant for that purpose because they showed him holding what appeared to be the same or a similar gun, making it more probable that Sangiovanni threatened S.V. with that weapon, a critical issue in the case. See Fed. R. Evid. 401. The relevance of those photos was further enhanced because at

least one of the photos was taken close in time to the April 25 assault.  See United States v. McGlothin, 705 F.3d 1254, 1265 (10th Cir. 2013).[2]

Third, the district court did not abuse its discretion in determining that the photos' probative value was not substantially outweighed by the danger of unfair prejudice to Sangiovanni.  When, as here, "other-act evidence is admitted for a proper purpose and is relevant, it may be admissible even though it has the potential impermissible side effect of allowing the jury to infer criminal propensity."  United States v. Moran, 503 F.3d 1135, 1145 (10th Cir. 2007) (internal quotation marks omitted).  "Evidence is unfairly prejudicial only if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged."  McGlothin, 705 F.3d at 1266 (internal quotation marks omitted).  Neither was the case here.

Lastly, the district court gave jurors the Tenth Circuit's pattern limiting instruction:

> You have heard evidence of other acts engaged in by Mr. Sangiovanni.  You may consider that evidence only as it bears on Mr. Sangiovanni's motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident and for no other

---

[2] Sangiovanni contends that he did not place his knowledge or ability to access the firearm at issue during the trial.  But Sangiovanni also did not stipulate that he knew about and had access to the firearm.  And the Government had the burden at trial to prove beyond a reasonable doubt that Sangiovanni knowingly possessed a Smith and Wesson nine-millimeter gun on April 25, 2010.  See McGlothin, 705 F.3d at 1263 n.12; see also United States v. Sampson, 980 F.2d 883, 888 (3d Cir. 1992) ("The parameters of Rule 404(b) are not set by the defense's theory of the case; they are set by the material issues and facts the government must prove to obtain a conviction.").

purpose. Of course, the fact that Mr. Sangiovanni may have previously committed an act similar to the one charged in this case does not mean that Mr. Sangiovanni necessarily committed the act charged in this case.

(I R. 424 (Instruction 8); see also V R. 398-99).)

Sangiovanni did not object to this instruction in the district court or in his opening brief, at least in regards to the admission of the photos under Rule 404(b)(2). Instead, it was not until his reply brief that he first argued that the limiting instruction was inadequate. For this reason, we decline to address Sangiovanni's belated argument. See United States v. Watson, 766 F.3d 1219, 1230 n.8 (10th Cir. 2014), cert. denied, 135 S. Ct. 735 (2014). We note, however, that this court has previously upheld the use of similar instructions against plain-error review. See McGlothin, 705 F.3d at 1267 & n.19.

## C. The Government did not constructively amend the indictment

Sangiovanni next argues that the Government constructively amended the indictment. The parties agree that, because he did not raise this issue in the district court, we apply plain-error review, considering whether (1) there was error that (2) was plain, (3) affected substantial rights and (4) seriously affected the fairness, integrity, or public reputation of judicial proceedings. See United States v. Kalu, 791 F.3d 1194, 1201 (10th Cir. 2015).

Here, there was no error, plain or otherwise, because the Government did not constructively amend the indictment. As relevant here, a constructive amendment broadens the indictment, permitting the jury to convict the defendant on conduct not charged by the grand jury. See id. at 1201, 1206. In this case, the indictment

7

charged Sangiovanni with unlawfully possessing a firearm "on or about April 25, 2010." (I R. 1.) Sangiovanni argues that the Government constructively amended that charge to permit the jury, instead, to convict him of possessing, on other dates, the firearms depicted in the photos Sangiovanni sent S.V.

Sangiovanni contends that the Government constructively amended the indictment in this manner because (1) the district court admitted the photos into evidence, (2) the Government, during its closing argument, argued that the photos corroborated S.V.'s testimony that Sangiovanni threatened her with Dallas Green's gun on April 25, 2010, at the convenience store, as well as showing that Sangiovanni was able to access the gun and exercise control and dominion over it, and (3) the district court did not adequately instruct jurors to limit their consideration of the photos for a specific Rule 404(b) purpose.

Sangiovanni's constructive-amendment argument is unavailing because the jury instructions made clear to jurors that the grand jury charged Sangiovanni with unlawfully possessing the firearm "[o]n or about April 25, 2010" (I R. 427, 431 (Instructions 11, 15)), and that "[t]he government must prove beyond a reasonable doubt that Mr. Sangiovanni committed the crime reasonably near April 25, 2010" (Id. 431 (Instruction 15).) The instructions further informed jurors that "Mr. Sangiovanni is not on trial for any act, conduct, or crime not charged in the indictment." (Id. 432 (Instruction 16).)

8

**D. The district court did not err in enhancing Sangiovanni's offense level by four based on facts found by the sentencing court (and not a jury) by a preponderance of the evidence (and not beyond a reasonable doubt)**

In calculating Sangiovanni's advisory sentencing range, the sentencing court enhanced Sangiovanni's offense level by four after finding, by a preponderance of the evidence, that Sangiovanni used or possessed a firearm in connection with another felony offense, U.S.S.G. § 2K2.1(b)(6)(B); in this case aggravated assault by pointing the firearm at the victim and threatening to kill her. Sangiovanni argues that a jury had to make that finding beyond a reasonable doubt.

The Fifth and Sixth Amendments require a jury to find beyond a reasonable doubt any fact (other than the fact of a prior conviction) that increases the statutory maximum or mandatory minimum sentence that a defendant faces. See Alleyne v. United States, 133 S. Ct. 2151, 2155 (2013); Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). But those requirements do not apply to facts, like the one at issue here, that a sentencing court finds in order to calculate a sentence within the statutorily prescribed range. See United States v. Cassius, 777 F.3d 1093, 1094, 1097, 1099 n.4 (10th Cir. 2015), cert. denied, 135 S. Ct. 2909 (2015). Sangiovanni acknowledges that Supreme Court and Tenth Circuit case law forecloses his argument, but he makes it on appeal "in order to preserve the issue for possible further appeal." (Aplt. Br. 37.)

For the first time on appeal, Sangiovanni further argues that there was insufficient reliable evidence to support the sentencing court's finding that he committed an aggravated assault because that finding was based on S.V.'s testimony,

9

and her testimony was suspect in light of evidence presented at trial that S.V. was an illicit drug user and a pathological liar. Reviewing for plain error, see United States v. Howard, 784 F.3d 745, 748 (10th Cir. 2015), we reject this argument. S.V.'s credibility is a question of fact for the sentencing court, see United States v. Virgen-Chavarin, 350 F.3d 1122, 1134 (10th Cir. 2003), and "factual disputes regarding sentencing not brought to the attention of the district court do not rise to the level of plain error," Howard, 784 F.3d at 749 (internal quotation marks omitted).

**E. Sangiovanni's 120-month sentence is not substantively unreasonable**

Applying the sentencing guidelines, the district court calculated Sangiovanni's offense level to be thirty and his criminal history category to be VI, resulting in an advisory sentencing range of between 168 and 210 months in prison. But, because by statute his offense was punishable by not more than ten years in prison, see 18 U.S.C. § 924(a)(2), Sangiovanni's guideline range became 120 months, see U.S.S.G. § 5G1.1(a), and that is the sentence the district court imposed. Because his sentence is within the applicable guideline range, it is presumed to be reasonable, and Sangiovanni has not rebutted that presumption. See United States v. Harry, 816 F.3d 1268, 1284 (10th Cir. 2016).

## III. CONCLUSION

For the foregoing reasons, we AFFIRM Sangiovanni's conviction and 120-month sentence

Entered for the Court

David M. Ebel
Circuit Judge